GAMMEL BOOK COMPANY V. CLARENCE S. PAINE ET AL.

FILED FEBRUARY 8, 1906. No. 14,084.

1. **Assignee: LIABILITY.** The contract and transaction set out in the opinion, *held* not to constitute an assumption of liability to the plaintiff by one who had purchased the interest of a person with whom the plaintiff had contracted.

2. **Instructions** discussed, and *held* not to be, under the circumstances, erroneous.

3. **Evidence** examined, and *held* to support the verdict.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE.    *Affirmed.*

*T. W. Blackburn,* for plaintiff in error.

*W. A. Saunders, contra.*

AMES, C.

In December, 1900, Paine and Lindsey entered into a written contract with the plaintiff book company, by the terms of which it was stipulated that in consideration for the use of the name of the Gammel Book Company, as publisher, the furnishing of a room for transacting the business, and the transfer to Paine and Lindsey of its interest in the "Biographical History of Texas Counties" and "The Bench and Bar of Texas," two publications thitherto undertaken by the plaintiff, and the transfer to Paine and Lindsey of all the contracts, engravings, plates,

data, biographies, etc., connected with these works, Paine and Lindsey agreed (1) energeticaly to push the sale of the proposed "Illustrated History of Texas" until a thorough canvass of the state should have been made; (2) to pay to the party of the first part 10 per cent. of all cash received from the sale of the books, and 10 per cent. of all cash received on orders for steel plates to be used therein; (3) to deposit with the plaintiff $5 out of the first payment made on each contract up to $5,000; (4) to assume all obligations incurred by the plaintiff in connection with "Biographical History of Texas Counties" and "Bench and Bar of Texas," for which orders to the amount of $3,350 had been taken; (5) to pay plaintiff $2,000 for these orders upon completion of the work. Incidentally it was also agreed that certain correspondence should be conducted by the plaintiff; that neither party should engage in a similar work, and that both sides should mutually assist each other in prosecuting the enterprise.

In February, 1902, Lindsey entered into a contract with Jacob H. North, of which the following preamble and stipulations are sufficient for the understanding of this case so far as respects North: "Whereas, Clarence S. Paine and J. Clyde Lindsey are equal partners in the publishing and engraving business under the firm name and style of Western Publishing and Engraving Company, and are the owners and holders of a large number of contracts with individuals for subscription to books known as 'History of Nebraska,' 'History of South Dakota,' and 'History of Texas,' contracts for steel plate work and engravings to be placed in said books, together with a large number of steel plates, copper plates, engravings, and other contracts and personal property. And, whereas, J. Clyde Lindsey is willing to sell all his right, title, claim, or interest in said firm and the assets thereof, and to turn over all contracts in his possession or under his control for the History of Nebraska, History of South Dakota, and History of Texas, and all steel or copper plates and engravings to be used in said books, all photographs, biographies, biographical

data, all impressions and engravings, that are now in his possession or under his control, contracts for steel and copper plate engravings, all books of account or memoranda, all promissory notes or evidence of indebtedness to said firm, and surrender transportation for himself and J. C. Knowles on the Union Pacific and Burlington & Missouri River and Elkhorn railroads, one copy holder, one table, and all contracts for the publication of the History of Nebraska, South Dakota, and Texas, together with the goodwill connected with said business, for the sum of seven hundred ($700) dollars: and, whereas, said Jacob H. North is willing to pay said seven hundred ($700) dollars for the above:

"Therefore, it is agreed by and between the said J. Clyde Lindsey, party of the first part, and Jacob H. North, party of the second part, that said J. Clyde Lindsey does hereby, and by these presents does sell, assign, and transfer unto Jacob H. North all his right, title, claim, lien, or interest in and to the business of Paine & Lindsey or the Western Publishing and Engraving Company, and to the assets of said firm, and to all business relating to plate contracts for steel or copper plates, the impressions from which are to be used in the History of Nebraska, History of South Dakota, and History of Texas, that are now owned or claimed by the party of the first part, either as an individual or as a partner in the firm of Western Publishing and Engraving Company, all steel or copper plates and impressions or engravings, prints, biographies, photographs, biographical data, all books of account or memoranda, promissory notes or evidences of indebtedness or accounts and bills due said firm, and the good will of all said business, and surrender transportation for himself and J. C. Knowles on the Union Pacific and Burlington & Missouri River and Elkhorn railroads, one copy holder, one table, all his interest in the contracts for the publishing of the History of Nebraska, History of Texas, and History of South Dakota, and all contracts with Jacob North & Co., Henry Taylor, Jr., & Co., E. G. Williams & Bro, and Barnes-

Crosby & Co., all of which are hereby sold and assigned
to said Jacob H. North. The plate contracts which are
assigned are set forth in the paper hereto attached and
marked exhibit A, and the amount set opposite each name
is the amount due and unpaid from the persons whose
names are set opposite said amounts."

North agreed to pay as a part of the price of his pur-
chase certain indebtedness of Lindsey, or of the Western
Publishing and Engraving Company, to third persons, but
the plaintiff was not mentioned, and North testifies, with-
out contradiction, that at the time he was ignorant of
the existence of the contract between it and Paine and
Lindsey. This action was brought by the plaintiff against
Paine and Lindsey and North to recover damages for an
alleged breach of the latter mentioned contract. North
was made defendant upon the ground that by reason of
his contract with Lindsey he had been substituted for, and
assumed the obligations of, the latter in the contract be-
tween the plaintiff and Paine and Lindsey. There is noth-
ing in the contract of North having that purport or effect,
and we think the trial court was right in holding that
there is nothing in the evidence or the circumstances of the
transaction by which such a claim can be supported, and
in directing a verdict in his favor. The same we think is
true of affidavits in support of a motion for a new trial
for newly discovered evidence as against North. A recital
of the facts and circumstances sufficient for an exposition
of the theory of the plaintiff upon this point would extend
this opinion to a length which, we think, would be out of
proportion to its importance, and it must suffice to say that
the conclusion at which we have arrived is founded upon
as thorough and careful an examination of the record as
we have been able to give it.

Lindsey was not served and did not appear in the action.
Paine answered, denying the breaches of contract alleged
in the petition, and alleging breaches by the plaintiff, for
which he prayed damages. The evidence, both upon the
issues tendered by the petition and upon those tendered

by the answer, was conflicting, and the jury returned a verdict for the defendant, assessing his damages at one dollar.   It is complained that the court instructed the jury that they should determine "whether the plaintiff, the Gammel Book Company, or Clarence S. Paine violated the terms of the contract," instead of whether the partnership of which Paine was a member had done so, but we think that the error, if any, upon this record, was formal only and could not have misled the jury.   Paine was the only member of his firm active in the transaction, and, although in strict, technical legal phrase his sins of commission or omission, if any, were those of his partnership and properly describable as such, it was not only not objectionable to direct attention to his own personal conduct in the matter, but an instruction so framed as to have intimated that the partnership might have been otherwise guilty of some misconduct subjecting it to liability would have lacked support by the evidence and might have been prejudicially misleading.

A large number of exceptions were taken to rulings with respect to the admission and rejection of evidence offered as tending to prove breaches of the contract by the plaintiff or excuses by the defendant for nonperformance.   It would be a tedious and profitless task to set them forth and discuss them *seriatim.*   Indeed, it is a task which counsel for the plaintiff did not undertake in his brief or argument, except in the shortest and most perfunctory manner, which has not impressed us with the idea that any of them was so far erroneous, if at all so, as to be likely to have diverted the minds of the jury from the real issues, or to have led to the misapprehension of any evidence, pertinent or otherwise, to their determination.   In short, the case appears to us to have been carefully and fairly tried without the intervention of any serious error, and the verdict seems to be fully supported by the evidence, and we recommend that the judgment be affirmed.

OLDHAM, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.